1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN PLASKON,

                    Plaintiff,

          v.

PUBLIC HOSPITAL DISTRICT NO. 1 OF
KING COUNTY d/b/a VALLEY MEDICAL
CENTER, *et al.*,

                    Defendants.

Case No.  C06-0367RSL

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. #32) filed

by all defendants, who include Valley Medical Center ("VMC" or the "hospital"), Drs. Eric

Waterman, Terrence Block and Andrew Oliveira, and certain members of VMC's Board of

Commissioners, including Carolyn Purnell, Michael Miller, and Dr. Gary Kohlwes (collectively,

"defendants").  Plaintiff, who was a surgeon at VMC, argues that defendants terminated some of

his clinical privileges to practice at VMC and publicized stigmatizing information about him in

retaliation for his complaints about staffing and patient care.  Plaintiff asserts a claim under 42

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

U.S.C. § 1983 based on alleged violations of his First Amendment and due process rights.[1] According to his complaint, plaintiff seeks monetary damages and reinstatement of "full clinical privileges."

Plaintiff, who is also a licensed attorney and is proceeding *pro se*, sent the Court a letter requesting an extension of time to respond to the motion, claiming that he needed additional time to obtain affidavits from unnamed "out of state witnesses."  The Court denied the request. (Dkt. #37).  Plaintiff has not filed any response to defendants' motion.

For the reasons set forth below, the Court grants defendants' motion.

## II.  DISCUSSION

### A.    Background Facts.

Plaintiff applied for initial appointment to the surgery department at VMC in October 1998.  In his application, he stated that his specialty was general surgery.  Plaintiff's request for clinical privileges to practice as a general surgeon was granted in June 1999.

VMC uses a peer review decision-making process in granting privileges at the hospital. After obtaining an initial appointment to VMC's active staff, physicians are required to apply for renewal of their privileges every two years to remain on active staff at the hospital.  The physician bears the burden of establishing that he is qualified and competent to hold each privilege he requests, each time he reapplies for the privileges.  Declaration of Dr. Terrence Block, (Dkt. #32-2) ("Block Decl.") at ¶ 3.

In May 2002, Dr. Oliveira, who was the Chair of the Professional Performance Committee ("PPC"), submitted a memorandum to various VMC personnel informing them that VMC intended to adopt a concept called "core privileging."  The core privileges for each specialty "were those procedures which a physician within that specialty would commonly have residency training and board certification to perform and which would be necessary in that

---

[1] Because the Court finds that this matter can be decided on the memoranda, declarations, and exhibits, defendants' request for oral argument is denied.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

1  specialty." Declaration of Andrew Oliveira, (Dkt. #32-8) ("Oliveira Decl.") at ¶ 2.  In June

2  2003, VMC formally changed its handling of privileges for surgeons, including plaintiff, so that

3  the hospital would grant them only those privileges that fell within the list of core competencies

4  as established by the department chief.

5      Plaintiff applied to renew his privileges in 2002.  When he did so, he signed a form

6  acknowledging that as an applicant for "recredentialing," he had "the burden of producing

7  adequate information for proper evaluation of [his] competence . . . and other qualifications."

8  Oliveira Decl., Ex. 8.  Plaintiff's application was initially approved by the Chief of the

9  Department of General Surgery and the PPC.  It was then sent to the Medical Executive

10  Committee ("MEC") for further review.  Dr. Waterman, the acting Chief of Staff for the MEC,

11  approved plaintiff's re-application only in part.  He noticed that plaintiff applied for privileges

12  outside of the core privileges, including ear, nose and throat privileges (the "ENT privileges").

13  Dr. Waterman noted on the approval document that plaintiff would need to show training and

14  clinical activity establishing his competency to perform the ENT privileges.  Plaintiff's

15  application was then returned to the PPC for further review.  When Dr. Oliveira asked plaintiff

16  about his request, plaintiff confirmed that he had not performed the procedures since he began

17  practicing at VMC and did not have any plans to do so.  Dr. Oliveira asked plaintiff if he would

18  withdraw his request for ENT privileges, and plaintiff refused.

19      In August 2002, the PPC reviewed plaintiff's application further.  It recommended that

20  his application be approved with the exception of the ENT privileges because plaintiff had not

21  performed any of the ENT privileges while practicing at VMC and because the privileges were

22  outside of the core privileges.  The MEC then reviewed, and ultimately confirmed, the PPC's

23  recommendation in September 2002.  Plaintiff chose not to attend the meeting or provide

24  evidence of his competency, despite having been invited to do so.  Nevertheless, over the next

25  several months, the MEC invited him three more times to attend an MEC meeting and provide

26  evidence of his competency to perform the ENT privileges.  Plaintiff declined each time.  The

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 3

1   MEC also reminded plaintiff that he could withdraw his request for ENT privileges without any

2   further action by the hospital, but he refused.

3          In October 2002, plaintiff requested a Fair Hearing.  Defendant Dr. Gary Kohlwes, acting

4   as Chairman of the Board of Commissioners ("BOC"), provided plaintiff with a list of VMC's

5   witnesses for the hearing and provided other information about the process.  During the hearing,

6   plaintiff did not call any witnesses, claiming that they were unavailable.  He declined an offer

7   for a continuance to obtain witnesses.  When discussing the ENT privileges at the hearing, he

8   admitted: "I don't expect I'll do these privileges.  It's just very uncommon for a general surgeon

9   to do these at Valley Medical Center."  Block Decl. at ¶ 30.  In February 2003, the Fair Hearing

10  Panel unanimously confirmed the PPC's and the MEC's decisions.  Plaintiff appealed the

11  decision to the BOC.  The BOC is the entity that takes official action to grant or deny privileges

12  based on the recommendations made to it by the MEC.  Once again, plaintiff was invited to

13  provide any evidence of his clinical activity for any of the ENT privileges, and he again failed to

14  do so.  In March 2003, the BOC issued its decision accepting the recommendations of the PPC,

15  the MEC, and the Fair Hearing Panel.

16         By letter dated November 8, 2002, plaintiff informed Dr. Waterman that the decision not

17  to grant him ENT privileges was required by federal mandate to be reported to the National

18  Practitioner Data Bank ("NPDB").  Block Decl., Ex. 18.  Therefore, in March 2003, VMC

19  submitted information about the limitation of plaintiff's privileges to the NPDB.  Block Decl.,

20  Ex. 37.  The letter explained the reasons for the action as "surgeon requested seven ENT

21  privileges not performed in over three years; physician felt to be ineligible for these privileges

22  based upon our inability to judge current clinical competence.  Also privileges are not 'core' for

23  a general surgeon."  Id.

24  **B.     Summary Judgment Standard.**

25         On a motion for summary judgment, the Court must "view the evidence in the light most

26  favorable to the nonmoving party and determine whether there are any genuine issues of material

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 4

1  fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences

2  supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v.

3  Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might

4  resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W.

5  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

6  **C.    Analysis.**

7        Defendants claim that plaintiff's claims are barred by the one-year statute of limitations

8  in RCW 7.71.030, which provides the "exclusive remedy for any action taken by a professional

9  peer review body of health care providers . . . that is found to be based on matters not related to

10  the competence or professional conduct of a health care provider." RCW 7.71.030(1). In this

11  case, it is unclear whether that statute applies because the decisions appear to have been based

12  on plaintiff's "competence." Defendants also argue that plaintiff's claims for monetary relief are

13  barred by the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101, *et seq.*

14  According to the plain language of the statute, however, immunity does not apply to civil rights

15  cases. 42 U.S.C. § 11111(a); Austin v. McNamara, 979 F.2d 728, 733 (9th Cir. 1992) (noting

16  that the immunity provision "excludes from its coverage suits brought under 42 U.S.C. § 1983").

17  Defendants are therefore not entitled to immunity under the HCQIA. Nevertheless, plaintiff's

18  claims fail for the reasons set forth below.

19        **1.    Due Process Claims**

20        This Court will not review the merits of VMC's decision. Instead, the review is limited

21  to whether plaintiff was afforded due process and "whether an abuse of discretion by the

22  hospital board occurred, resulting in an arbitrary, capricious or unreasonable exclusion." Lew v.

23  Kona Hosp., 754 F.2d 1420, 1425 (9th Cir. 1985); see also Ritter v. Bd. of Comm'rs, 96 Wn.2d

24  503, 515-516 (1981). "Administrative action is not arbitrary or capricious if there are grounds

25  for two or more reasonable opinions and the agency reached its decision honestly and with due

26  consideration of the relevant circumstances." Ritter, 96 Wn.2d at 515. In this case, although

27

28  ORDER GRANTING MOTION
   FOR SUMMARY JUDGMENT - 5

plaintiff alleges that Dr. Waterman had a conflict of interest, he does not explain what the conflict was or how it affected his decision.  Instead, the hospital reached the decision honestly and after considering the circumstances in numerous stages of review.  Ample grounds support defendants' decision, including the fact that the privileges were not core privileges, plaintiff had not performed the ENT privileges while employed at the hospital, he did not plan to do so, and he refused to produce any evidence of his competence to perform the procedures, despite repeated invitations to do so.

Plaintiff also claims that he was denied procedural due process.  To evaluate that claim, the Court considers "(1) whether the interest plaintiff asserts rises to the level of a property interest, and if so, (2) whether, in light of the competing interests of the individual and the state, the procedures afforded plaintiff before termination satisfied due process." Lew, 754 F.2d at 1424 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  Plaintiff had no property right to the ENT privileges because he had to reapply periodically to obtain privileges and had no contractual right to renewed privileges.  See, e.g., Ritter, 96 Wn.2d at 509 (explaining that, under Washington law, a physician does not have a protected property interest in continued renewed privileges at a public hospital unless he has a specific contractual right to them).

Plaintiff also argues that defendants violated his liberty interest by publicly disclosing the denial of privileges to the NPDB.  However, plaintiff does not allege, and there is no evidence to show, that the disclosure seriously damaged his reputation, foreclosed his opportunities to obtain other employment, or resulted in his dismissal.  See, e.g., Ritter, 96 Wn.2d at 510; Jablon v. Trustees of Cal. State Colleges, 482 F.2d 997 (9th Cir. 1973).  Furthermore, the information communicated was accurate.  See, e.g., Ulrich v. City & County of San Francisco, 308 F.3d 968, 982 (9th Cir. 2002) (explaining that plaintiff "must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested . . .").  Accordingly, plaintiff was not denied a property right or a liberty interest.

Even if plaintiff was deprived of those rights, he was afforded due process.  Plaintiff

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 6

received numerous and adequate procedural steps before the hospital decided not to grant him
ENT privileges.  He received written notice of the Fair Hearing and the issue to be decided, and
he had an opportunity to present a defense including cross-examining and calling witnesses.  At
each step, the hospital's decisions were carefully considered and based on substantial evidence.
Lew, 754 F.2d at 1424.  In fact, plaintiff chose not to pursue some of the processes available to
him, including presenting evidence at the Fair Hearing and attending any of the many MEC
meetings to which he was invited.  The hospital had a clear interest in requiring some evidence
of competency for the requested privileges, and plaintiff never provided any such evidence.
Accordingly, defendants did not violate plaintiff's due process rights.

### 2.    First Amendment Claim

Plaintiff alleges that his reapplication for privileges was denied "shortly after" he
complained about staffing and patient care protocols.  Complaint at ¶ 1.1; id. at ¶ 4.3.  A
plaintiff arguing retaliation for the exercise of First Amendment rights must show the following:
(1) that he or she engaged in protected speech, (2) that the employer took adverse employment
action, and (3) that his or her speech was a substantial or motivating factor behind the adverse
employment action.  See, e.g., Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003).
After plaintiff makes that showing, the "burden shifts to the public employer to demonstrate
either that, under the balancing test established by *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568
(1968), its legitimate administrative interests outweighed [plaintiff's] First Amendment rights or
that, under the mixed motive analysis established by *Mount Healthy City Sch. Dist. v. Doyle*,
429 U.S. 274, 287 (1977), it would have reached the same decision even in the absence of the
Plaintiff's protected conduct."  Ulrich, 308 F.3d at 976.  Even if plaintiff's speech was protected
by the First Amendment, plaintiff has not provided any evidence of retaliation.  His assertion
that his application was partially denied "shortly" after his protected conduct is too vague and
conclusory to defeat summary judgment.  In addition, plaintiff has provided no evidence that his
employer expressed any opposition to his speech.  Defendants have provided a reasonable

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7

explanation for the hospital's decision, and plaintiff has not offered any evidence that the reason was false or pretextual.  See, e.g., Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751 (9th Cir. 2001) (explaining the potential ways a plaintiff can show that retaliation was a substantial or motivating factor behind the adverse employment action).  Accordingly, plaintiff's First Amendment claim fails.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Dkt. #32).  The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff.


DATED this 16th day of November, 2007.




_MMr S Casnik_
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8